# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GINA RIVERA,

    Plaintiff,

vs.                                                                  Civil No. 98-0836 JC/WWD

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed April 6, 1999 **[docket # 9]**. The Commissioner denied Plaintiff's request for Social Security Disability Insurance benefits. Plaintiff is 48 years old and alleges a disability which commenced October 15, 1992, due to degenerative disc disease of the cervical spine, fibromyalgia, headaches, carpal tunnel syndrome, and depression.

    2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that Ms. Rivera's testimony of subjective complaints and functional limitations lacked credibility; that she has a residual functional capacity for at least light work and that her nonexertional impairments have not significantly altered this work capacity. The ALJ determined that Plaintiff could return to her past relevant work as a sales person and was therefore not disabled. Ms. Rivera has a tenth-grade education but never received her GED, and in the past has also worked as a boutique and shoe repair shop owner/manager.

    3. The Appeals Council declined to review Ms. Rivera's request for review of the ALJ's

decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

4. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

5. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ erred in finding that Ms. Rivera's testimony was not credible; 2) the ALJ erred in placing greater weight on the consultative evaluator's opinion than that of the treating physician; (3) the ALJ erred at step four of the sequential evaluation when he found that Ms. Rivera could perform her past relevant work; (4) the ALJ erred in applying the "sit and squirm" analysis in this case and (5) the ALJ erred in relying on the vocational expert's testimony, as it was based on a defective hypothetical.

6. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. § 404.1520(a - f). The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

7. At the first four levels of the evaluation, the claimant must show: (1) that she is not

2

working; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

8. Plaintiff last worked in 1994. She had two car accidents which left her with symptoms she described to the ALJ as "sharp, burning pain" in her upper and lower back which spreads to her arms and fingers causing them to become numb and tingle. Tr. at 194. The pain then spreads down to both her legs and causes numbness and tingling in her toes. Tr. at 198-99. She describes the pain as "burning like pins and needles," "constant," and a "10" on a scale of 1 to 10. Ms. Rivera testified that she naps everyday for one to two hours to alleviate the exhaustion she constantly feels. Tr. at 201.

9. She also complains of severe headaches which occur every day. Medications do not provide relief for any of the pain. Tr. at 195, 204. Ms. Rivera told the ALJ she cannot even grasp a coffee cup because her grip is so weak, and that she uses a cane with which to walk around, although it was not prescribed for her or given to her by a physician. Tr. at 196-97.

10. Plaintiff denied being able to do any kind of housework, and testified that her cousin comes in to clean house, wash dishes and clothes and iron. Tr. at 200. She has no hobbies and no longer drives. She spends the day in bed watching television. Tr. at 204-05. She stated that she can sit for only 5 minutes and stand for only 15 minutes before she needs to lie down. She does not take walks and told the ALJ that she cannot walk. She stated that she cannot lift her purse and has her husband carry it for her. Tr. at 199.

11. Plaintiff described her depression to the ALJ as feeling very fatigued and "tired all the time." She said that she also frequently feels edgy and angry for no reason. Tr. at 203. She had been taking Prozac at the time of the hearing and said that this alleviated the depression, but not her pain. Tr. at 204-05. Ms. Rivera is also apparently being treated with hormonal replacement for menopause and with other medication for dysphagia, neither of which are impairments which I need to address as issues raised by Plaintiff.

**Medical Evidence**

12. G.T.Davis, M.D., examined Plaintiff on a consultative basis in May 1995. Tr. at 107. He noted that a previous EMG was normal, that Plaintiff had full range of motion in the cervical region but reported discomfort with forward bending. Ms. Rivera showed some discomfort with lower back movement, but good range of motion with shoulders, elbows, wrists, hips, knees and ankles. His impression was that Plaintiff suffered from chronic low back pain and he reported that his examination did not reveal any significant abnormalities. Dr. Davis stated that he could find no medical basis for Plaintiff's condition to interfere with work. Tr. at 108.

13. The following month, Plaintiff visited her treating physician Dr. Peterson complaining of her pain symptoms, anxiety, anger and depression, and dysphagia. Tr. at 141. He referred her for a GI series and prescribed Tagamet for the dysphagia. He also prescribed Prozac for depression. Dr. Peterson noted that her hormone levels were consistent with menopause. The GI series showed evidence of gross reflux but was otherwise normal. Tr. at 143.

14. In June 1995, Dr. Mark Berger saw Ms. Rivera for a neurological consult. Tr. at 111-17. Upon examination, he noted that she exhibited decreased range of motion in her neck in all directions and a decreased vibratory sensation in her thumb, index and middle fingers of her left

4

hand. He observed that she walked with a normal gait. He opined that Plaintiff's neck pain was musculoskeletal in nature.

15. An cervical spine MRI was done in June 1995 based on Plaintiff's complaints of shoulder and arm pain. It revealed mild annular bulging at C6-7, but was otherwise within normal limits. Tr. at 117.

16. In April 1996, Donna Deming, M.D., saw Ms. Rivera on a consultative evaluation. Tr. at 129. Plaintiff reported that her symptoms had worsened over the previous year. She complained that her entire upper extremities hurt, that her fingers got so numb that she could not open jars and her muscles would go into spasm. Plaintiff told the doctor that the pain increased on bending and twisting, and with cold, but that she got minimal relief with hot showers and liniment rubs. Tr. at 130. Her headaches occurred daily but were relieved with ibuprofen.

17. Dr. Deming noted that Plaintiff had full range of motion except for her back and neck and that she could not walk on her toes and heels because doing so was too painful. She also noted that Plaintiff stood throughout the entire interview. The clinical examination elicited sensory abnormalities (more on the left than the right) in Plaintiff's right foot and hands. The diagnosis was chronic back pain and neck pain which radiated to the upper extremities and which was probably myofascial in etiology, with normal nerve conduction studies.

18. Charles Romero, a chiropractor whom Plaintiff visited in April 1996, opined that treatment has been ineffective in relieving her symptoms. Tr. at 147. According to treatment notes from the UNM Medical Center from November and December 1996, Plaintiff's physicians had diagnosed her with and treating her for fibromyalgia. Tr. at 167-69. She was prescribed

Flexoril, Cytomel and Prozac.[1]  Although Ms. Rivera reported some improvement in her energy level, she continued to have pain "everywhere" in her body, presenting as "multiple tender parts throughout [body]." Tr. at 167.

**First Alleged Error**

19. Plaintiff contends that the ALJ erred in finding that Ms. Rivera's testimony was not credible. The ALJ concluded that Plaintiff's testimony of subjective complaints and functional limitations were not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility. In his decision, the ALJ reviewed all of the available medical evidence in the record.

20. The ALJ's finding of noncredibility was based on: the fact that there were no objective findings to support Plaintiff's allegations of nonexertional impairment; that Ms. Rivera was wearing a neck brace at the hearing that appeared new and unworn; that Plaintiff carried and used a cane when she claimed she could not even carry her purse; and that she stated that she could perform household tasks, visit with friends, shop and drive as needed and attend a church group every two weeks. Tr. at 19, 75, 131. I find that this evidence is insufficient upon which to base a determination of noncredibility. See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (court does not upset credibility determinations that are supported by substantial evidence).[2]

---

[1] "The cause or causes of fibromyalgia are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. . . The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and -- the only symptom that discriminates between it and other diseases of a rheumatic character -- multiple tender spots. . . on the body." Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996).

[2] Defendant points out, as a basis to support the noncredibility determination, that Plaintiff stated that her symptoms occurred at night. Resp. at 3. An inference that Plaintiff's symptoms occur *only* at night is misleading when considered in context of the various medical

21. The fact that there were no objective findings to support Plaintiff's allegations of nonexertional impairment has little impact because such findings are not expected to accompany a diagnosis of fibromyalgia. There are no laboratory tests to confirm the presence or severity of fibromyalgia. See Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996). It is a condition which is diagnosed by ruling out other diseases through medical testing. See e.g., Lisa v. Secretary of Dep't of Health & Human Servs., 940 F.2d 40, 44-45 (2d Cir.1991).

22. The other factors that went into the noncredibility determination are similarly thin. For example, Ms. Rivera's daily activities are not of the sort which would confirm her ability to pursue daily work, particularly when other evidence to support a noncredibility finding is lacking. Broadbent v. Harris, 698 F.2d 407 (10th Cir.1983) (holding that sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity). This case should be remanded to include an opportunity for the ALJ to conduct another credibility analysis.

**Second Alleged Error**

23. Plaintiff alleges that the ALJ erred in placing greater weight on the consultative evaluator's opinion than that of her treating physicians who diagnosed her with fibromyalgia. Upon examination of the ALJ's decision, I find that the ALJ did not ignore the treating physicians' reports and diagnosis of fibromyalgia. Dr. Davis opined that Plaintiff's medical condition would not interfere with her ability to work, but there is no indication that the ALJ rejected the opinion of the other physicians, who gave their reports as discussed above but expressed no thoughts as to whether Plaintiff could perform any kind of work.

24. Based on what he wrote in his decision, what the ALJ rejected was the Plaintiff's

---

reports. Tr. at 112.

position that the impairment (fibromyalgia) was severe enough to preclude work. Disability requires more than mere inability to work without pain. Rather, the pain must be so severe, "by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988); see Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996) (noting that although some people may have such a severe case of fibromyalgia as to be totally disabled from working, most do not). Further, Dr. Davis' report is not inconsistent with the other medical reports. Thus, I find no merit to this allegation.

**Third Alleged Error**

25. Plaintiff next contends that the ALJ erred at step four of the sequential evaluation when he found that Ms. Rivera could perform her past relevant work. Plaintiff's argument rests on an alleged failure by the ALJ to consider Ms. Rivera's nonexertional impairments. On the contrary, these *were* considered but discounted by the ALJ based on his conclusion that the Plaintiff's complaints regarding nonexertional impairments were not credible. However, given my findings concerning the ALJ's credibility determination, above, remand of this case should also include a re-examination of Plaintiff's nonexertional impairments at step four. This issue is also addressed below under Plaintiff's fifth alleged error.

**Fourth Alleged Error**

26. Plaintiff alleges that the ALJ erred in applying the "sit and squirm" analysis in this case as part of the credibility determination. I have addressed Plaintiff's concerns in this regard above under the first alleged error.

**Fifth Alleged Error**

27. Plaintiff contends that the ALJ erred in relying on the vocational expert's testimony,

as it was based on a defective hypothetical, viz., that neither of the two hypotheticals offered to the vocational expert (VE) included Ms. Rivera's diagnosis of fibromyalgia nor the accompanying functional limitations which she experiences, or her alleged inability to grip.

28. The first hypothetical assumed that Plaintiff had the residual functional capacity (RFC) to do the light work required for retail sales or retail store manager (shoe or clothing store), and also included conditions secondary to depression and medication side effects, i.e., slight impairment of concentration, persistence and pace. Tr. at 206 -07. The second hypothetical was similar except that the impairment of concentration, persistence and pace was moderate. The VE opined that under both hypotheticals, Plaintiff could still perform the non-managerial jobs in retail sales.

29. The third and fourth hypotheticals were posited to the VE by Plaintiff's attorney, and added conditions reflecting functional limitations in sitting and standing which precluded an ability to do light work and (for the fourth) an inability to grip. The VE testified that these added conditions virtually eroded the occupational base. Tr. at 208. A sit/stand option interjected by the ALJ opened the possibility of parking garage attendant, but even with that option, Plaintiff would still require an ability to grip in order to sustain competitive employment. Tr. at 209.[3]

30. A vocational expert's testimony can provide substantial evidence to support the ALJ's findings only if the hypothetical question presented to the vocational expert adequately reflects the state of the record. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). In this case, the

---

[3] SSR-85-15 states: "As a general rule, limitations of fine manual dexterity have greater adjudicative significance--in terms of relative numbers of jobs in which the function is required--as the person's exertional RFC decreases. Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work."

9

hypotheticals may not have accurately reflected the record, depending on the findings upon remand, for two reasons.

31. First, the ALJ's decision stated that Plaintiff's nonexertional factors do not significantly alter her work capacity. Tr. at 15. However, a reassessment on credibility may have an effect on whether Plaintiff's nonexertional impairments (and which ones) should be taken into account in the hypotheticals.

32. Second, Plaintiff's RFC is as yet insufficiently determined. To be placed at a particular level of residual functional capacity, a claimant "must be able to perform the full range of such work on a daily basis." Frey v. Bowen, 816 F.2d 508, 512 (10th Cir. 1987). Plaintiff's residual functional capacity is relevant at step four. Winfrey v. Chater, 92 F.3d 1017, 1023 n.4 (10th Cir. 1996); SSR 96-8p. At the beginning of step four, the ALJ should "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy. Id. at 1023.

33. Aside from Plaintiff's own statements regarding her functional limitations, see ¶ 10, above, the record here does not contain any medical opinion regarding Plaintiff's abilities in this area. Cmp., e.g., Gathright v.Shalala, 872 F.Supp. 893 (D.N.M. 1993) (ALJ erred in not asking doctor to make a complete RFC assessment where no physician who personally examined Plaintiff did a full RFC assessment). Therefore, a proper RFC evaluation should be conducted on remand.

34. In sum, I find that (1) the ALJ erred in finding that Ms. Rivera's testimony was not credible; 2) the ALJ did not err in placing greater weight on the consultative evaluator's opinion than that of the treating physician; (3) the ALJ erred at step four of the sequential evaluation when

he found that Ms. Rivera could perform her past relevant work; (4) the ALJ erred in applying the "sit and squirm" analysis in this case and (5) the ALJ erred in relying on the vocational expert's testimony, as it was based on a defective hypothetical.

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 9]** be granted and that this cause be remanded to the Commissioner for the following: to conduct another credibility determination; and to perform a reevaluation at step four, including consideration of nonexertional impairments and a determination of Plaintiff's functional limitations, obtaining medical and vocational consultations where needed. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE